STATE *ex rel.* STATE ROAD COMMISSION
OF WEST VIRGINIA, *et al.*

*v.*

HONORABLE FRANK L. TAYLOR, JUDGE,
CIRCUIT COURT, KANAWHA COUNTY,
WEST VIRGINIA, *et al.*

(No. 12645)

Submitted February 7, 1967. Decided March 21, 1967.

536

BERRY, JUDGE, dissenting.

*Preiser, Greene & Hunt, Stanley E. Preiser,* for relators.

*Woodroe, Kiser & Steed, John O. Kiser,* for respondents.

BROWNING, JUDGE:

Petitioners filed their original application for a writ of prohibition in this Court on January 26, 1967, seeking to prohibit the respondent, the Honorable Frank L. Taylor, Judge of the Circuit Court of Kanawha County, from trial of a condemnation proceeding on January 30, 1967, and from ordering the case to trial until a reasonable time after the construction of the public improvements involved are completed.

The petition alleges that petitioners instituted a proceeding to condemn a portion of the lands of the respondent, Grandview Memorial Park Company, on November 16, 1965, and, on January 20, 1966, commissioners were appointed and the petitioners given the right of immediate entry; on July 20, 1966, the commissioners made an award of $187,500.00 for the property taken and damage to the residue, to which both parties excepted; on September 9, 1966, petition-

ers deposited the sum of $12,500.00 with the clerk of the court under the provisions of Code, 54-2-14a, as amended, which was subsequently distributed by the court to persons entitled thereto; the case was set for trial at the September term and, although a motion by the petitioners to continue the case in accordance with Code, 54-2-14, was refused, a continuance was effected by agreement of counsel; and, the case was thereafter set for trial on January 30, 1967, and a similar motion for a continuance in accordance with Code, 54-2-14, has been refused. The petition then alleges that actual construction is now in progress on the property; there are innumerable pieces of heavy equipment thereon; there is a great amount of noise, disruption and mud on the premises and on the access road to the premises; and, a jury would be severely prejudiced if a view were taken and the case tried before completion of construction and the petitioners will be denied the fair and impartial trial guaranteed by the constitution and statutes of this state.

This Court issued a rule to show cause why the writ should not issue as prayed for on January 27, 1967, returnable February 7, 1967, in response to which respondents answered separately controverting some allegations of the petition not wholly pertinent here and admitting others, but in the main denying that petitioners are entitled, for whatever reason, to a continuance at the present time. Filed with the answers as exhibits are the record of the case below and a transcript of the proceedings had upon petitioners' motion for a continuance on January 26, 1967.

Article 2, of Chapter 54 of the Code, as amended, governs procedure in eminent domain proceedings in this state and Section 14 thereof, as amended by Chapter 142, Act of the Legislature, Regular Session, 1939, provides that if the applicant be the State of West Virginia, upon a determination by the Court that the land is sought for a public use, the Court, if requested, shall enter an order permitting immediate

entry on the premises. The section then provides that if such entry is made and the property injured the applicant may not, without consent of the condemnee, abandon the proceedings ". . . but such proceedings shall proceed to final award or judgment after a reasonable time has elapsed for completion of the work upon the particular property so entered upon and taken possession of. . . ." The section also provides for payment of the amount of the final award with interest at six per cent from the date of entry. This section, prior to its amendment by Chapter 122, Acts of the Legislature, Regular Session, 1937, contained the language ". . . the same shall proceed with reasonable dispatch to a finality" in place of the above quoted provision.

The Legislature, by Chapter 65, Acts of the Legislature, Regular Session, 1963, amended Article 2 of Chapter 54 of the Code, by adding thereto, among other things, a new section denominated "Section 14a. Condemnation by State or its Political Subdivisions; Alternative Method." This section provides, in substance and insofar as pertinent here, that if the applicant be the state and if the court is satisfied that the purpose is for a public use, the state shall, prior to entry, pay into court such sum as it estimates to be the fair value of the property plus damages to the residue whereupon title shall be vested in the state and an order entered permitting immediate entry and possession. The section then provides that if the applicant enter under the provisions of this section and injures the property it shall not thereafter abandon the proceeding, without consent ". . . but such proceeding shall proceed to final award or judgment. . . ."

The condemnation petition herein contains no reference to the particular statute under which it was filed, however, the prayer is for the appointment of commissioners and for an order permitting immediate entry, which right was granted by order of the court on January 20, 1966. The first reference to a particu-

lar statute is contained in the order entered September 9, 1966, reciting proceedings of May 31, 1966, and stating that ". . . Petitioners did apply to the Court for an Order allowing said Petitioners leave to pay into Court the sum of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00), in accordance with Chapter 54, Article 2, Section 14A. . . ", which was permitted to be done and it was further ordered that title be vested in the petitioners ". . . subject to the provisions of Section 14(a). . ." Proceedings were thereafter held for a distribution of the sum paid into court in conformity with the provisions of Section 14a. The record then discloses: the continuance in September by agreement of counsel and a pre-trial order entered January 12, 1967, which, among other things, set the case for trial on January 30, 1967, to which no objection was made by either party; the motion for a continuance by petitioners filed on January 26, 1967, containing similar allegations to the petition for a writ of prohibition herein; the notice thereof to defendant; and, the order of the court denying the motion.

The constitution of this state, Article III, Section 9, provides: "Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; . . ." The legislature of this state did, by general law pursuant to that authority and shortly after the creation of the state, by what is now denominated Chapter 54, Article 2, prescribe the procedure to be followed in such cases. Specifically did it prescribe by what is now Section 14 of Article 2, Chapter 54 of the Code of 1931, as amended, for the manner in which the State of West

Virginia or any political subdivision seeking to take private property for public use should proceed and how the owner should be compensated. This was the only method prescribed until, by Chapter 65, Acts of the Legislature, Regular Session, 1963, the legislature enacted Code, 54-2-14a. That section has not been construed by this Court nor is it necessary in this proceeding to determine why it was thought necessary by the legislature to enact that section, which it denominates "Alternative method for condemnation by State or its political subdivision."

Under the provisions of Section 14, in a proper case, the court or judge shall at the request of the applicant "make an order permitting the applicant at once to enter upon, take possession, appropriate and use the land sought to be condemned for the purposes stated in the petition." The section further provides that if the applicant does enter upon and take possession of the property and thereafter does any work or injures the property that it shall not ". . . abandon the proceedings for the condemnation thereof, but such proceedings shall proceed to final award or judgment after a reasonable time has elapsed for completion of the work upon the particular property so entered upon and taken possession of, and the applicant shall pay to the owner of the land the amount of compensation and damages as finally determined in such proceedings, . . . ." It will be noted that the alternative method provided by Section 14a provides that "Before entry, taking possession, appropriation, or use, the applicant shall pay into court such sum as it shall estimate to be the fair value of the property, or estate, right, or interest therein, sought to be condemned, including where applicable, the damages, if any, to the residue beyond the benefits, . . . ." The section then provides that "Upon such payment into court, the title to the property, or interest or right therein, sought to be condemned, shall be vested in the applicant, and the court or judge shall, at the request of the applicant, make an order permitting the applicant

at once to enter upon, take possession, appropriate, and use the property . . . . ''

It is apparent from this record that the petitioners began this proceeding under the provisions of Section 14. An order was entered by the trial court on January 20, 1966, appointing commissioners and giving the petitioners the right of immediate entry. There was no provision for and no payment made by the petitioners into court prior to taking possession and making entry upon the land. It is true that after the commissioners had made an award on July 20, 1966, of $187,500 for ''the property taken and damage to the residue'', on September 9, 1966, an order was entered reciting proceedings of May 31, 1966, a date previous to the report of the commissioners, by which petitioners were permitted to deposit the sum of $12,500 with the clerk of the court, assertedly under the provisions of Section 14a, although it is obvious that such an amount was insignificant in view of the amount of the intervening award by the commissioners. This token effort, the reason for which is not disclosed by the record, to convert the proceeding to one instituted under the provisions of Section 14a, if such it was rather than an agreed upon payment into court for the convenience of the parties, did not and could not have that effect. We do not have before us and need not and, of course, do not decide the question of whether a proceeding instituted under Section 14 can ever be converted, in a proper manner, to a proceeding under Section 14a. Suffice to say that the order of September 9, 1966, standing alone, is not sufficient to do so.

In *McConiha v. Guthrie*, 21 W. Va. 134, at page 142, this Court said: ''It will be conceded that the circuit (court) of Kanawha county was invested by law with jurisdiction to condemn real estate for public uses. This jurisdiction, as to the manner of proceeding is statutory; and, therefore, in order to divest the title of the owner of the land proposed to be taken, the mode

prescribed by the statute must be strictly pursued, as it confers the only authority possessed by the court in such proceedings." See also, *State v. Bouchelle,* 137 W. Va. 572, 73 S. E. 2d 432. Section 14 confers certain rights upon both the state and the condemnee in a condemnation proceeding and one of the rights secured to the state is the right to delay proceedings until a reasonable time has elapsed for completion of the work upon the land sought to be condemned. Applying the strict construction rule of the *McConiha* and *Bouchelle* cases, Section 14 does not disclose any delegation to a trial court of any discretion as to the matter of delaying proceedings until a reasonable time has elapsed for completion of the work and it is the view of this Court that the trial court, under the circumstances, exceeded its legitimate powers in the instant case in refusing the continuance sought by the state. See *Hardy v. Simpson,* 118 W. Va. 440, 190 S .E. 680.

Code, 53-1-1, as amended, provides: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." This Court has construed this section on innumerable occasions and in *Rakes v. Ferguson,* 147 W. Va. 660, 667, 130 S. E. 2d 102, 108, it is stated, "Though a court has jurisdiction of the subject matter in controversy and of the parties, when it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question the writ of prohibition will lie under general law and under the statute. . . ." citing many causes in support thereof.

Therefore the writ of prohibition will be granted to prohibit the trial judge from hearing this case at the present term of that court and until, to use the language of Section 14, "after a reasonable time has elapsed for the completion of the work upon the par-

ticular property so entered upon and taken possession of, . . . . " Of course, in the final adjudication of this matter the petitioners will receive credit for the sum of $12,500 which was deposited with the Clerk of the Circuit Court of Kanawha County.

*Writ awarded.*

BERRY, JUDGE, dissenting:

I respectfully dissent from the majority opinion in this proceeding wherein reasons are given for the granting of the writ of prohibition prayed for. The writ of prohibition granted by this Court prohibited the Judge of the Circuit Court of Kanawha County from trying a condemnation proceeding instituted by the petitioners in this proceeding after counsel for the petitioners had requested that the case be continued at a previous time when it was to be tried and had agreed that the case be set down for trial on January 30, 1967. About two weeks after a pretrial conference was held and an order entered with regard to the issues to be tried and the case set on the trial calendar for trial, the attorney for the petitioners came into the Circuit Court and moved for a continuance "until after the construction of the public improvements herein involved are (sic) completed.", which motion was denied by said court. There was no indication that any such motion would be made by counsel for the petitioners when the case was set down for trial, apparently with his approval.

A few days before the condemnation proceeding was to be tried the petition for a writ of prohibition was filed in this Court and a rule was granted, which in effect made it impossible for the case to be tried on the date it was set for trial. The condemnation proceeding was instituted in the Circuit Court of Kanawha County November 16, 1965, and all grading had been completed in connection with the highway

over the defendant's property and the only thing that remained to be done was the paving of the highway.

It is the petitioners' contention in this proceeding that the eminent domain proceeding was instituted under the provisions of Code, 54-2-14, as amended, which allows the petitioners to make an entry upon the property sought to be condemned and to take possession of such property for the purpose stated in the eminent domain proceeding and requires that such " * * * proceeding shall proceed to final award or judgment after a reasonable time has elapsed for completion of the work upon the particular property * * * " which was entered upon and taken possession of. It also provides that interest at the rate of six per cent shall be paid to the landowner from the date of the actual entry upon the land so taken. The pleading filed in the Circuit Court when this proceeding was instituted in November, 1965, did not specifically state that the proceeding was brought under Section 14. However, in May, 1966, the petitioners specifically referred to the provisions of Code, 54-2-14a, as amended, and proceeded under the provisions of that Section by paying into the Court on September 9, 1966 the amount of $12,500, the estimated value of the property, as required by Section 14a, and also acquired title to the property as required by such Section. Under Section 14a, which petitioners specifically requested, as indicated by an order entered by the Circuit Court dated May 31, 1966, interest of six per cent should be paid on the entire amount awarded including the $12,500 from the date of the original entry, but not on the $12,500 from the date the landowners received said sum, and such amount should be deducted from the final award.

Section 14a clearly indicates by its heading that it is an "alternative method" for condemnation by the state or its political subdivision. It would therefore clearly appear that even if the original condemnation proceeding was instituted under Section 14, on May 31, 1966, it was converted into the alternative method

provided for in Section 14a and Section 14a *does not* provide that the proceeding proceed to final award or judgment "after a reasonable time has elapsed for completion of the work." Instead, Section 14a, the alternative method, provides that " * * * such proceeding shall proceed to final award or judgment * * * ", and the conclusion of the project is *not* by the statute a reason for delay as urged by petitioners. The only party that could object to such conversion from Section 14 to 14a would be the landowner and it did not elect to do so.

The petitioners cannot blow hot and cold at the same time. In other words, the petitioners cannot rely on Section 14 and hold up the proceedings on the ground that a final award or judgment cannot be rendered until a reasonable time *after* the completion of the work which is not even the law under the provisions of Section 14 and also rely on 14a. Section 14 merely states that the proceedings shall proceed to final judgment after a reasonable time has elapsed *for* the completion of the work. Section 14a provides that petitioner can immediately acquire the title to the property in question and be required to pay interest on any excess from the time of entry if he paid something when he entered.

Petitioners admit in their brief that the original entry was done under Section 14, and this Section requires interest to be paid from the time of the original entry on the entire award. Therefore, the method of paying interest is completely different under the two Sections and certainly interest cannot be computed under Section 14a and procedure conducted under Section 14.

There is no question that the Circuit Court of Kanawha County has jurisdiction to hear this eminent domain proceeding instituted in that Court. The only justification for the granting of the writ of prohibition to prohibit such Court from hearing this proceeding would be that it had exceeded its legitimate power. The

burden rests upon the petitioners to prove by a preponderance of evidence that such Court exceeded its power and there is no proof whatsoever to so indicate. The eminent domain proceeding was instituted in the Circuit Court of Kanawha County almost a year and a half ago, and there is no proof that a reasonable time has not elapsed within which the work in question could have been completed after the original entry. It appears that all of the work has been done except the paving of the highway over the land in question and that apparently there is a factual conflict as to whether all work on said land in question has been stopped. The action of the trial court would, in any event, only be classified as abuse of discretion, which error can be reviewed only on appeal. However, it does not appear from the record presented in this case that the Circuit Court has even abused its discretion and in any event it can not be said that the trial court exceeded its legitimate power in any manner and even if the petitioners are relying on Section 14 they have not shown good ground for the granting of the writ of prohibition to prohibit the eminent domain proceeding from going to final judgment in the Circuit Court of Kanawha County on the date it was set for trial. The state of the record of the eminent domain proceeding is that at the request of the petitioners the eminent domain proceeding was pursued specifically under the provisions of the alternative method of condemnation by the state following the provisions of Section 14a. By the issuing of this writ the proceeding under Section 14a, requested by the petitioners, will have to be treated as never having been requested in order that title to the property in question can be restored to the landowners and the payment into court of $12,500 will have to be returned to the petitioners and they must be required to pay six per cent interest on the entire amount of damages from the date of the original entry, all of which indicates an intention on the part of the attorney for petitioners of not acting in good faith with a con-

stitutional court of unlimited jurisdiction in this State. The petitioners, through their attorney, specifically requested the proceeding be proceeded with under the provisions of Code 54-2-14a and then asked this Court to prohibit the Circuit Court from proceeding with the trial under the alternative method as requested, after such request had been granted by the court.

For the reasons herein stated, I would refuse to grant the writ of prohibition and would have allowed the Circuit Court of Kanawha County to proceed to final judgment and if there be any error committed in the proceeding it could properly be taken care of on appeal.