W. VA. DEPT. OF HIGHWAYS, *etc., et al.*

*v.*

ARLIE ARBOGAST, *etc., et al.*

(No. 13400)

**AND**

W. VA. DEPT. OF HIGHWAYS, *etc., et al.*

*v.*

MARK E. BURKE, *etc., et al.*

(No. 13401)

Submitted October 3, 1973.    Decided December 18, 1973.

*Anthony G. Halkias,* Legal Division, DOH, *James E. Spurlock* for petitioners.

*Brown, Harner & Busch, John E. Busch* for respondents.

NEELY, JUSTICE:

These cases are original actions in prohibition brought by the West Virginia Department of Highways against the Honorable George R. Triplett, Judge of the Circuit Court of Randolph County, and certain landowners to prohibit the judge from proceeding to trial with four separate actions in condemnation. The proceedings in prohibition have been consolidated for decision because they present almost identical questions of law and fact.

On April 26, 1973 the West Virginia Department of Highways brought condemnation proceedings to condemn four pieces of property owned by respondent landowners. The subject land is rural property in Randolph County, West Virginia, which is within the contemplated right-of-way of Appalachian Corridor H, a proposed four-lane highway crossing much of eastern West Virginia. The West Virginia Department of Highways brought its proceedings in condemnation pursuant to Chapter 54,

Article 2, Section 14a of the *Code of West Virginia,* 1931, and in conformity with the provisions of that section deposited allayment funds, *i.e.,* funds available for immediate distribution to the landowners to relieve the hardship of relocation, with the circuit court, which were paid by the court to the landowners. These allayment funds represented the Department of Highways' estimate of the fair market value of the land. *Code,* 54-2-14a provides:

> "Before entry, taking possession, appropriation, or use, the applicant shall pay into court such sum as it shall estimate to be the fair value of the property, or estate, right, or interest therein, sought to be condemned, including, where applicable, the damages, if any, to the residue beyond the benefits, if any, to such residue, by reason of the taking."

Under this section a party may accept the allayment funds without prejudicing his rights to a commissioners' award or a jury verdict; however, should the award or verdict be less than the allayment funds, the landowner is required to repay the difference between the award and the allayment funds.

The allayment funds granted by the Deparment of Highways and the awards of the appointed commissioners for the four tracts of land in question, were as follows:

|  | Department of Highways | Commissioners' Award |
|---|---|---|
| No. 73-88 | 10,500 | 32,750 |
| 73-89 | 21,000 | 62,250 |
| 73-90 | 14,260 | 30,000 |
| 73-91 | 29,700 | 45,000 |

Exceptions were taken to the commissioners' awards by both the State and the landowners, and all four cases were set for trial on August 27, 1973, approximately four months after the condemnation proceedings were begun.

The Department of Highways moved the Circuit Court to continue the condemnation proceedings until a reasonable time had elapsed for the completion of construction on the properties in question, and as authority for their motion to continue, the Department cited Chapter 54, Article 2, Section 14 of the *Code of West Virginia,* 1931, as amended, which provides that in condemnation proceedings instituted under that statute:

> ". . . such proceedings shall proceed to final award or judgment after a reasonable time has elapsed for completion of the work upon the particular property so entered upon and taken possession of, and the applicant shall pay to the owner of the land the amount of compensation and damages as finally determined in such proceedings . . . ."

The circuit court overruled the motion for a continuance, apparently upon the grounds that *Code,* 54-2-14a, the section under which the condemnation proceedings were brought, does not provide for an automatic continuance. The relevant portion of *Code,* 54-2-14a says:

> ". . . such proceeding shall proceed to final award or judgment, and the amount of compensation and any damages as finally determined in such proceeding shall be paid in the manner provided by this section."

Respondent landowners argue that Section 14a is designed to provide for more expeditious payment to condemnees than Section 14, and that it was the express intent of the legislature to eliminate, as a ground for continuance, the lack of completion of a project. Respondents argue that once proceedings are brought under Section 14a, that section governs all aspects of the action to the exclusion of any provision in Section 14.

A proper resolution of whether the Department of Highways is entitled to a continuance under *Code,* 54-2-14a requires an analysis of the interaction of two aspects of the law: first, the constitutional rights of a landowner to just compensation, and secondly, the legislative policy

with respect to condemnation proceedings as reflected by *Code,* 54-2-14, as amended, and *Code,* 54-2-14a.

In *McGibson v. County Court,* 95 W.Va. 338, 121 S.E. 99 (1924), this Court recognized that where land is taken by condemnation proceedings "there must be . . . some remedy to the owner whereby he may have compensation within a reasonable time. . . . He must not be put to risk or unreasonably delay." In *McGibson* this Court held that a statute permitting a county court to "enter upon any lands, other than those prohibited by law, and locate and build [a] road, and sixty days after said road is completed . . . ." then ascertain fair compensation, is unconstitutional because it fails to provide a remedy to the landowner by which he can enforce compensation within a reasonable time after the taking. Therefore, any procedure in condemnation which does not provide for compensation within a reasonable time is unconstitutional, and the fact that a project has not been completed cannot constitutionally support a motion for continuance if it appear to the court that the time necessary to complete the project is unreasonable.

Converging upon this problem from the opposite direction is this Court's holding in *State ex rel. State Road Commission v. Taylor,* 151 W.Va. 535, 153 S.E.2d 531 (1967) in which a writ of prohibition was awarded under a factual situation similar to the cases for decision, except in *Taylor* the proceedings were brought under Section 14, rather than Section 14a of the *Code.* In *Taylor,* the circuit court had set the condemnation proceedings for trial approximately fourteen months after they were instituted although the State Road Commission alleged that the project had not been completed and that the jury would be prejudiced by innumerable pieces of heavy equipment on the property along with the noise, disruption and mud on the premises and on the access road. This Court said at 151 W.Va. 542, 153 S.E.2d 535:

" . . . Section 14 confers certain rights upon both the state and the condemnee in a condemnation

> proceeding and one of the rights secured to the state is the right to delay proceedings until a reasonable time has elapsed for completion of the work upon the land sought to be condemned. . . . Section 14 does not disclose any delegation to a trial court of any discretion as to the matter of delaying proceedings until a reasonable time has elapsed for completion of the work and it is the view of this Court that the trial court, under the circumstances, exceeded its legitimate powers in the instant case in refusing the continuance sought by the State."

Therefore, under Section 14 this Court has held that the State has an absolute right to a continuance for a reasonable time in order to complete its work to avoid possible jury prejudice as a result of the usual disorder which is attendant upon construction.

In light of the discretionary nature of a motion for continuance and the reluctance of appellate courts to reverse trial courts unless there is a clear abuse of discretion, the legislature incorporated into Section 14 a statutory basis for continuance because of the peculiar and recurring problem of possible jury prejudice where there is on-going public highway construction. Therefore, we do not agree with respondents' argument that the legislature specifically intended to exclude lack of completion of a project as a ground for continuance in 1963 when it enacted Section 14a. Section 14a is silent with regard to the subject of continuances; however, by virtue of Section 14 it has long been the law that under appropriate circumstances, the State is entitled to a continuance as a matter of right to complete a project. "A statute intended by the law making body to become effective as part of a general system of law, relating to other subjects, will be so construed as to operate in harmony with such system, and not to contravene or infringe upon it, if the terms thereof, fairly and reasonably considered, will permit such construction." *Ex Parte Anderson,* 81 W.Va. 171, 94 S.E. 31 (1917).

If we were to conclude that the State is not entitled to a continuance under 14a, then great public mischief would be achieved, as the State would elect to proceed in all instances under Section 14, and no allayment funds would be available to dispossessed landowners. Therefore, this Court holds that Section 14 and Section 14a must be read in *pari materia,* and that the legislature intended the same provisions for continuances under Section 14a as existed under Section 14, as they did not specifically renounce a policy which has become an integral part of our law of condemnation.

As the petitioner is entitled to the same rights to a continuance under Section 14a as under Section 14, it was clearly in excess of the trial court's legitimate powers to require the petitioner to proceed to trial less than five months after condemnation proceedings were instituted. Until the constitutional limits as outlined in *McGibson, supra,* are reached, the State has an absolute right to a continuance. "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power." Syl. pt. 2, *State Road Commission v. Taylor, supra.* Accordingly two writs of prohibition will issue prohibiting the trial judge from proceeding to the trial of these cases until a reasonable time has elapsed to complete construction.

*Writs awarded.*