584 S.E.2d 574

**STATE of West Virginia ex rel. BELL & BANDS, PLLC, Petitioner,**

**v.**

**The Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, and Lori Simpson Davis and Davis Law Offices, PLLC, Respondents.**

No. 31265.

Supreme Court of Appeals of West Virginia.

Submitted June 17, 2003.

Decided June 30, 2003.

Fred F. Holroyd, Esq., Tom Price, Esq., Holroyd & Yost, Charleston, for Petitioner.

Jeffrey V. Mehalic, Esq., Law Offices of Jeffrey V. Mehalic, Charleston, for Respondents.

PER CURIAM.

This proceeding involves a writ of prohibition under the original jurisdiction of this Court. The underlying matter encompasses a dispute with attorney's fees and expenses between an attorney and her former law firm. The Petitioner, Bell & Bands, PLLC (hereinafter Bands), seeks a writ of prohibition to prohibit the enforcement of the Honorable Judge Tod J. Kaufman's order quashing an attorney's fee lien filed by Bands. The Petitioner also asks that we stay distribution of the proceeds of settlement of a personal injury suit to Respondent, Lori Simpson Davis and Davis Law Firm (hereinafter "Davis"). Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the writ is hereby denied.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case involves an attorney's fee dispute between two law firms. In *Lori Simpson and Davis Law Office P.L.L.C. v. Bell &*

*Bands P.L.L.C.*, Kanawha County No. 00–C–2217, filed September 1, 2000, by Lori Simpson Davis, Esq., against her former law firm Bell & Bands, Davis alleged breach of contract, constructive discharge, and tortious interference of business relationships. Bands filed an answer and counterclaim alleging that Davis had intentionally, improperly, and tortiously undertaken a course of action to interfere with Bands' contractual relationship with certain clients. In that case, Judge Zakaib entered an April 20, 2001 "Order Regarding Disbursement of Settlement Proceeds and Establishment of Interest Bearing Account" to apply to future disputes. The order provided that

> disputed attorney's fees and expenses related to settlements on behalf of current clients of [Davis] and former clients of [Bands] will be deposited into this account, as will disputed attorney's fees and expenses related to settlements on behalf of current clients of [Bands], in which [Davis has] asserted an attorney's fee lien, whether in Kanawha County or any other county in the State of West Virginia.

The result of such litigation between the parties were attorney's fee liens filed in various cases.

In the underlying case, Martin, who is a current client of Davis, was a former client of Bands. As such, the resulting attorney fees in *Martin, et al. v. Tong Ho Hsing, et al.*, are the subject matter of litigation between Davis and Bands. Bands filed a "Notice of Attorney Fee Lien" in the *Martin* case. Subsequently, on or before February 3, 2003, Davis settled *Martin* and on March 4, 2003, Davis filed "Plaintiffs' Motion to Quash Attorney Fee Lien" in *Martin* which was presided over by Judge Kaufman.

On March 11, 2003, a hearing was held before Judge Kaufman and on March 12, 2003, he entered an "Order Quashing Attorney Fee Lien" in *Martin*, which ordered Bands' attorney's fee lien quashed and provided that $50,000 was to be deposited into the escrow account established by Judge Zakaib with regard to disbursement of settlement proceeds. Bands believes that Judge Kaufman exceeded his authority.

Consequently, Bands filed the current action requesting that this Court issue a writ of prohibition enjoining enforcement of the order of Judge Kaufman quashing the attorney's fee lien filed by Bands, and requested that a stay be issued prohibiting distribution of the proceeds to Davis as ordered by Judge Kaufman. Bands further argues that the proceeds of the settlement in *Martin* be distributed to Pamela J. Martin and that the resulting attorney's fees be deposited into the account established by the April 20, 2001 order of Judge Zakaib.

On April 22, 2003, in addition to her response to Bands' petition for writ of prohibition, Davis filed a "Motion To Permit Interim Distribution Of Settlement Proceeds To Pamela And Elliott Martin And Reimbursement For Case–Related Expenses." Davis submitted an affidavit that her expenses in *Martin* were $80,116.59. On May 13, 2003, this Court lifted the stay for the limited purpose of permitting the Circuit Court of Kanawha County to allow distribution of proceeds of the settlement to Pamela and Elliot Martin as well as for reimbursement of case-related expenses incurred by Davis Law Offices.

## II.

### STANDARD FOR ISSUING A WRIT

A writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In order to determine whether the writ of prohibition should be granted we apply the following standard of review:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2)

whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

## III.

## DISCUSSION

Bands petitions this Court to issue a writ of prohibition enjoining enforcement of the order of Judge Kaufman quashing the attorney's fee lien filed by Bands in *Martin*. According to Bands, Judge Kaufman "assumed jurisdiction and exceeded legitimate powers over that certain Order Regarding Disbursement of Settlement Proceeds and Establishment of Interest Bearing account entered by the April 20, 2001 Order by Judge Zakaib in *Lori Simpron Davis Law Offices, P.L.L.C. v. Bell & Bands P.L.L.C.*" Bands indicates that the account was set up by Judge Zakaib "as an available and uniform remedy for the disputes over attorneys fees and expenses in cases wherein the clients are current clients of Davis and former clients of Bell & Bands."

In *Noll v. Dailey*, 72 W.Va. 520, 523, 79 S.E. 668, 669–70 (1913), this Court held:

Where the court, although having jurisdiction of the cause, during the trial of it, exceeds its powers in some matter pertaining thereto, for which there is no adequate remedy by the ordinary course of proceeding, the writ of prohibition lies, under the general principles of law. . . .

This Court has also held that:

Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

Syllabus Point 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973).

■ Moreover, " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53–1–1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 1, *State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999). In addition, a writ of prohibition is an appropriate remedy in cases where the lower court has no "jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va.Code § 53–1–1 (1923). In the instant matter the circuit court has jurisdiction, therefore we look to Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979):

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

■ Further, in Syllabus Point 2 of *State ex rel. State Road Commission v. Taylor*, 151 W.Va. 535, 153 S.E.2d 531 (1967), this Court provided: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power."

Bands opines that "Judge Kaufman does not have jurisdiction to usurp an Order in Judge Zakaib's court which is currently being litigated," and cites *State ex rel. Shamblin v. Dostert* 163 W.Va. 361, 255 S.E.2d 911 (1979), for this contention. Conversely, Davis argues that the writ of prohibition should not issue in this case because Judge Kaufman "had jurisdiction to determine the matter at issue, he properly exercised his legitimate powers, and in so doing he properly considered the proposed Orders presented by both parties." Davis further maintains that Judge Zakaib's order states that "disputed" fees and expenses are to be placed into the escrow account. Davis argues that Judge Zakaib's order "does not specifically state how the 'disputed' fees are to be determined, however, it would appear that either the judge presiding over the case in which attorney's fees are at issue, or Judge Zakaib would have jurisdiction to determine what is disputed, and that at a later date, Judge Zakaib could determine the division of those disputed fees."

■ In Syllabus Point 2 of *Shamblin*, we held:

> W.Va. Const., art. 8 § 1, W.Va. Const., art. 8 § 3, and W.Va.Const., art. 8 § 6 when read together provide an orderly and exclusive system by which errors of circuit courts may be corrected only by the West Virginia Supreme Court of Appeals and not by other circuit courts. One circuit court may not directly or indirectly interfere with the orders of another circuit court unless specifically provided by stat-

ute or civil rule regardless of how erroneous such orders may be.

In *Shamblin*, this Court wrote:

> In this original proceeding the petitioner, J.W. Shamblin, seeks to prohibit the respondent judge of the Circuit Court of Berkeley County from interfering with service of the lawful process of the Circuit Court of Nicholas County. We can conceive of no power by which one circuit court may interfere with the process or orders of another circuit court regardless of how erroneous or imperfect those orders or process may be; therefore, we award the writ.

*Id.* at 362, 255 S.E.2d at 912.

The facts of *Shamblin* are clearly distinguishable from the case in point. In *Shamblin*, the Circuit Court of Berkeley County directly interfered with the order of the Circuit Court of Nicholas County on the matter of the right to satisfaction of a judgment protected by the West Virginia Code.[1] With regard to this case, this Court has set up a mechanism in *Kopelman and Associates, L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996), for which circuit courts may determine fees in disputes between law firms. Judge Kaufman was simply working within the confines of *Kopelman* and Judge Zakaib's order.

■ In Syllabus Point 2 of *Kopelman*, this Court provides:

> Although the amount of time spent by each respective firm is an important consideration in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided, a circuit court also must consider retrospectively upon the conclusion of the case: (1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill

---

1. The dispute in this case involves cases pending before two circuit court judges within the same circuit.

needed to achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. This list is not exhaustive, and a circuit court may consider other factors as warranted by the circumstances in addition to awarding out-of-pocket expenses. In making its determination, however, a circuit court must make clear on the record its reasons for awarding a certain amount. Such a determination rests in the sound discretion of the circuit court, and it will not [be] disturbed unless the circuit court abused its discretion.

Bands further argues that it was denied an opportunity to present objections to the proposed order tendered to Judge Kaufman by Davis reflecting the circuit court's rulings at the hearing held on March 11, 2003. We find no merit in Bands argument with regard to an opportunity to present objections as it is clear from Judge Kaufman's order that he considered both the proposed order from Davis as well as the suggested changes of Bands and entered an order accordingly.

█ In addition, Bands attests in its petition that it "could suffer irreparable harm" by Judge Kaufman's order as it is possible that Bands could obtain a judgment that is in excess of the $50,000 set aside by Judge Kaufman. Curiously though, during argument before this Court, Bands seemed to indicate that its interest in the *Martin* case would not exceed $50,000. Accordingly, Davis contends that Judge Kaufman's conclusion that $50,000 was enough to protect any potential interest of Bands was based upon his observations in presiding over the case and that when Judge Zakaib analyzes the disputed fees, "it will be clear that the Petitioner is in no way entitled to even a meager portion of the fees set aside by Judge Kaufman." Davis argues that Bands was unable to quantify its interest in the attorney's fees from *Martin* and believes that Judge Kaufman "erred on the side of generosity in directing that fifty thousand dollars be deposited into escrow."

We agree with Davis to the extent that the record is replete with examples of Judge Kaufman attempting to conduct a so-called *Kopelman* analysis. To no avail, Judge Kaufman exhaustively attempted to engage Bands in a deliberation to quantify its efforts in this case. Moreover, during argument before this Court, it was revealed by Bands that it wished all of the fees be placed in the account set up by Judge Zakaib with the possibility that such funds may be used to satisfy claims with disputes in other cases between the parties. We find that the $50,000 was appropriately placed in the account by Judge Kaufman who vehemently attempted to quantify the parties' interests. We further note that Bands was unable to expound before this Court what interest that it may have in the *Martin* case. We therefore deny the writ and direct that the funds placed in the escrow account from the *Martin* case are to be used for satisfaction of disputes solely within *Martin* and that such money may not held for potential restitution with disputes between the parties in other cases.

## IV.

## CONCLUSION

Based upon the foregoing, we deny the Petitioner's request for a writ of prohibition. Moreover, in the interest of judicial economy and efficiency, we are remanding the issue of the fee dispute in *Martin* to the court of Judge Kaufman with directions that he transfer this case to the court of Judge Paul Zakaib for a *Kopelman* analysis. We further direct that the money set aside by Judge Kaufman may not be used for any other purpose other than the satisfaction of the fee dispute in *Martin*.

Writ Denied.