609 S.E.2d 861

**STATE of West Virginia ex rel. Richard Brooks, Petitioner**

v.

**The Honorable Paul ZAKAIB, Jr., Judge of the Circuit Court of Kanawha County, Respondent**

No. 31782.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2004.

Decided Nov. 15, 2004.

Concurring Opinion of Justice Starcher Dec. 23, 2004.

Stuart Calwell, Esq., Mary McQuain, Esq., The Calwell Practice, Charleston, West Virginia, Attorneys for Petitioner.

David L. Shuman, Esq., Dwayne E. Cyrus, Esq., Shuman, McCuskey & Slicer, Charleston, West Virginia, Attorneys for John De-Luca, M.D.

Chanin M. Wolfingbarger Krivonyak, Esq., James D. McQueen, Jr., Esq., McQueen, Harmon & Murphy, Charleston, West Virginia, Attorneys for Rakesh Wahi, M.D.

Richard D. Jones, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorney for Charleston Area Medical Center.

MAYNARD, Justice:

This proceeding involves a writ of prohibition under the original jurisdiction of this Court. The underlying matter encompasses a dispute with regard to records that the Petitioner, Mr. Richard Brooks, obtained from the Circuit Court of Grant County, pursuant to a freedom of information request (FOIA). Mr. Brooks planned to use the records in his underlying medical malpractice action in Kanawha County. However, by an order dated May 3, 2004, the Circuit Court of Kanawha County denied Mr. Brooks' motion to unseal the records. Mr. Brooks now seeks a writ of prohibition to prohibit enforcement of the May 3, 2004, order. Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the writ is hereby granted as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In January of 1995, the Petitioner, Mr. Richard Brooks, was a passenger in an automobile that was struck by a train. As a result of the accident, Mr. Brooks suffered a

dissecting thoracic aortic aneurysm, which was a life-threatening condition requiring surgery. He was taken to the Respondent, Charleston Area Medical Center (hereinafter "CAMC"), where co-Respondent, Dr. Rakesh Wahi, repaired a tear in Mr. Brooks' aorta. Following the surgery, it became apparent that Mr. Brooks could not move his lower extremities and that he had been rendered a T–6 paraplegic. On January 10, 1997, Mr. Brooks, who claims that he was paralyzed as a result of the surgery, filed a medical professional liability action against Dr. Wahi and CAMC in the Circuit Court of Kanawha County.

Soon afterward, Dr. Wahi left CAMC and moved to Grant County, West Virginia. At the same time, CAMC initiated a peer review investigation of Dr. Wahi as a result of Mr. Brooks' surgery as well as the surgical outcomes of other patients treated by him. Following the completion of the peer review proceedings, the *Charleston Gazette* published an article which allegedly re-printed verbatim the contents of some of the peer review documents in spite of the statutory peer review privilege prescribed by West Virginia Code § 30–3C–1 to –3 (1975).[1]

In 2000, Dr. Wahi filed a defamation action against CAMC and the Daily Gazette Company[2] in the Circuit Court of Grant County styled *Wahi v. CAMC*, Civil Action Number 00–C–61 (the "Grant County action"). Dr. Wahi argued that the published information jeopardized his ability to practice medicine in this State. Thereafter, a jury trial ensued whereby the peer review documents were placed in evidence in support of the parties' respective positions. The jury later concluded that Dr. Wahi had not proven the elements of his defamation claim and entered a verdict in favor of CAMC.

On November 19, 2002, Mr. Brooks filed a motion to compel discovery from Dr. Wahi and CAMC and sought documents from the defamation suit filed by Dr. Wahi against CAMC in Grant County. Both Dr. Wahi and CAMC represented to the Circuit Court of Kanawha County that the file in the Grant County action had been sealed by Grant County Circuit Judge Andrew N. Frye, Jr. On November 25, 2002, the Circuit Court of Kanawha County granted, on a temporary basis, Dr. Wahi and CAMC's motion to seal all documents and transcripts relating to the Grant County action.

Mr. Brooks then filed a petition for a writ of prohibition with this Court challenging the circuit court's temporary sealing of the record. This Court accepted Mr. Brooks' petition and issued a Rule to Show Cause on June 23, 2003. *See State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 588 S.E.2d 418 (2003) (hereinafter "*Brooks I* "). In our opinion, we directed the Circuit Court of Kanawha County to "conduct further proceedings herein to ascertain whether the documents released to Mr. Brooks pursuant to its FOIA request were protected by a protective order or by an order sealing such records based upon its examination of the transcript of the Grant County proceedings." 214 W.Va. at 267, 588 S.E.2d at 432. We further explained that, "[i]n making this determination, the circuit court should additionally consider the requirements of the entry of such a protective order set forth in W.Va.Code § 30–3C–3 and W.Va.Tr.Ct.R. 10.03." *Id.*

Following our June 23, 2003, decision in *Brooks I*, Grant County Circuit Judge Andrew N. Frye, Jr., entered an August 4, 2003, "Order Memorializing Circumstances Surrounding the Sealing of the Record and Order Granting Plaintiff and Defendant's Joint Motion to Reseal Record[.]" with re-

---

1. In Syllabus Point 3 of *State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 588 S.E.2d 418 (2003), this Court held:

   'To effect a waiver of the privilege of confidentiality which attends information and records properly the subject of health care peer review under West Virginia Code §§ 30–3C–1 to –3 (1993), the Legislature has required that an individual must formally indicate his intent to waive this confidentiality by executing a

valid waiver.' Syllabus point 3, *Young v. Saldanha*, 189 W.Va. 330, 431 S.E.2d 669 (1993).

2. The Circuit Court of Grant County dismissed Dr. Wahi's cause of action against the Daily Gazette Company, publisher of the *Charleston Gazette*, finding that he had failed to state a claim for defamation, against this defendant, upon which relief could be granted. *See* W.Va. R.Civ.P. 12(b)(6).

604

gard to the Grant County action. That order was entered *nunc pro tunc* effective October 4, 2001, the day Judge Frye states that he initially sealed the record of the Grant County action at the request of Dr. Wahi and CAMC, who were the only parties to that action. On September 11, 2003, Mr. Brooks filed a motion with the Circuit Court of Kanawha County for entry of an order unsealing the record. After a December 15, 2003, hearing, the circuit court denied the motion and held that Judge Frye's order was "a valid and enforceable order and is an order which must be respected by this court and given full faith and credit."

On June 4, 2004, Mr. Brooks filed his current petition with this Court for a writ of prohibition to prohibit the Circuit Court of Kanawha County from enforcing its order against him and preventing him from using records from the Grant County action in his underlying medical malpractice action in Kanawha County. This Court issued a Rule to Show Cause on June 29, 2004, to evaluate the merits of Mr. Brooks' claim for relief.

## II.

### STANDARD FOR ISSUING A WRIT

A writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In order to determine whether the writ of prohibition should be granted we apply the following standard of review:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's

order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

## III.

### DISCUSSION

Mr. Brooks argues that the Circuit Court of Kanawha County failed to give effect to the mandate of this Court's June 23, 2003, decision in *Brooks I*, in its May 3, 2004, order. Mr. Brooks argues the Circuit Court of Kanwaha County incorrectly relied on the August 4, 2003, order of the Circuit Court of Grant County, which was obtained subsequent to *Brooks I*, by Dr. Wahi and CAMC. Mr. Brooks further maintains that the August 4, 2003, order was obtained without notice to him and that it should not be enforced as it was adverse to his interests and in contravention of the law. Mr. Brooks declares that because Dr. Wahi and CAMC sought to enforce the August 4, 2003, Grant County order in the Circuit Court of Kanawha County, that he had every right to challenge its validity and that the order of the Circuit Court of Grant County should be considered null and void.

Mr. Brooks also contends that the August 4, 2004, order is not *nunc pro tunc* because it was not based upon any memorandum or notation by the court upon the record in *Wahi v. CAMC*; it was obtained after this Court's June 23, 2003, decision; it was obtained without notice to him; and that sealing the records was arbitrary and an abuse of discretion. Finally, Mr. Brooks argues that the Circuit Court of Kanawha County's

May 3, 2004, order is an unlawful restraint on free speech as a major purpose of the First Amendment is to protect the free discussion of governmental and public affairs.

Conversely, Dr. Wahi maintains that both he and his co-Respondent, CAMC, agree that the entire record from *Wahi v. CAMC* was sealed per oral order of Judge Frye and it was clearly documented with the notation "Sealed per Judge Frye" on the outside of the file held in the Clerk's office of the Circuit Court of Grant County. Dr. Wahi further argues that the contention that the records were sealed is confirmed by the August 4, 2003, "Order Memorializing Circumstances Surrounding the Sealing of the Record and Order Granting Plaintiff and Defendant's Joint Motion to Reseal the Record." Dr. Wahi asserts that the privilege was never waived, that it should continue to be protected, and that the Circuit Court of Kanawha County's December 15, 2003, hearing and subsequent May 3, 2004, order were entirely within the mandate of this Court. Dr. Wahi says that Mr. Brooks is simply seeking discovery to gain documents that are clearly prohibited from being discovered pursuant to W.Va.Code § 30–3C–3 (1980), which provides:

> The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: Provided further, That upon further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.

CAMC asserts the same arguments as Dr. Wahi and further argues that Judge Frye's August 4, 2003, order should be given full faith and credit since two circuit courts have now found that there was no waiver of the privilege by either Dr. Wahi or CAMC. With regard to Mr. Brooks' argument that he should have been given notice of the hearing leading to the Circuit Court of Grant County's *nunc pro tunc* order, CAMC contends that Mr. Brooks was not a party to those proceedings and, therefore, his rights were not violated. CAMC further expounds that the order in question was not a new order, but merely a memorialization of what occurred during and after the trial in the original Grant County action. Thus, CAMC argues that this Court should not prohibit the enforcement of the proper order of the Circuit Court of Kanawha County.

We believe that given the circumstances surrounding the hearing of the Grant

County action, resulting in the August 4, 2003, order, Mr. Brooks' counsel should have been provided notice of that hearing. Initially, we note that our decision in *Brooks I* did not occur until June 23, 2003. At some point after that, Dr. Wahi and CAMC approached Grant County Circuit Judge Andrew N. Frye, Jr., who later entered the August 4, 2003, "Order Memorializing Circumstances Surrounding the Sealing of the Record and Order Granting Plaintiff and Defendant's Joint Motion to Reseal Record." While we acknowledge that Mr. Brooks was not a party to the original action filed by Dr. Wahi against CAMC, we do recognize that the sole purpose of the hearing regarding the August 4, 2003, order directly related to Mr. Brooks' pending case in the Circuit Court of Kanawha County.

■ Moreover, it should have been clear to Dr. Wahi and CAMC that any hearing regarding the status of the records in *Wahi v. CAMC* would have necessarily involved Mr. Brooks given our decision in *Brooks I.* For instance we explained that Mr. Brooks' counsel possessed evidence contradicting Dr. Wahi and CAMC's contention that the records had actually been sealed. We explained,

> Despite the respondents' representations that the circuit court entered a verbal order sealing the record of the Grant County proceedings, Mr. Brooks has submitted an affidavit wherein the court reporter who recorded the jury trial indicated that the Grant County Circuit Court had not entered a protective order. In her affidavit, the court reporter averred
>
> [i]n a conversation with Judge Frye of Grant County on or about the last week of October or first week of November of 2002, [I] was advised that any documents which were a part of the court record were to be considered public records because there was never any order entered to seal the records or make the[m] confidential.

*Brooks I,* 214 W.Va. at 266–267, 588 S.E.2d at 431–432. As such, given the limited factual circumstances surrounding the Grant County hearing and subsequent *nunc pro tunc* order, Mr. Brooks should have been

provided notice and given the opportunity to participate in the hearing. We therefore hold that when a hearing before a circuit court solely concerns matters that substantially affect the legal rights of parties in a separate suit, and the circuit court has knowledge that such rights will be affected, the circuit court must provide notice to those parties.

■ In *Noll v. Dailey,* 72 W.Va. 520, 523, 79 S.E. 668, 669–70 (1913), this Court held:

> Where the court, although having jurisdiction of the cause, during the trial of it, exceeds its powers in some matter pertaining thereto, for which there is no adequate remedy by the ordinary course of proceeding, the writ of prohibition lies, under the general principles of law. . . .

This Court has also held that:

> Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

Syllabus Point 2, *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973).

■ Additionally, " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53–1–1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 1, *State ex rel. Sims v. Perry,* 204 W.Va. 625, 515 S.E.2d 582 (1999). Likewise, a writ of prohibition is an appropriate remedy in cases where the lower court has no "jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va.Code § 53–1–1 (1923). In the instant matter, the circuit court has jurisdiction, therefore we look to Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Further, in Syllabus Point 2 of *State ex rel. State Road Commission v. Taylor*, 151 W.Va. 535, 153 S.E.2d 531 (1967), this Court provided: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power."

Consequently, we instruct the Circuit Court of Grant County to conduct a full hearing regarding the August 4, 2003, "Order Memorializing Circumstances Surrounding the Sealing of the Record and Order Granting Plaintiff and Defendant's Joint Motion to Reseal Record." We further order that any such hearing be transcribed and that proper notice be provided to Mr. Brooks' counsel, who shall have a right to appear and participate in the hearing.

## IV.

### CONCLUSION

Based upon the foregoing, we grant Mr. Brooks' request for a writ of prohibition as moulded.

Writ Granted as Moulded.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, Justice, concurring:

(Filed Dec. 23, 2004)

I agree with the majority opinion's decision to grant the requested writ of prohibition,

and to send this case to Grant County for reconsideration of the propriety of an order sealing the record. I feel compelled to write separately, however, to point out the obvious: the courts of this State belong to the people of this State, and their business should be conducted in the open, not through secret, sealed proceedings. A party simply cannot wield a document in open court as the litigation moves through the process as a weapon to win a lawsuit, and then act like it's a privileged secret to be shielded by the courts and never to be seen again by human eyes. To hold otherwise would seriously impair the public's trust and confidence in the judiciary.

Rule 26(c) of the *Rules of Civil Procedure* [1998] states that only upon motion "and for good cause shown" may a court "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" A court's order limiting discovery or other access to court documents "shall specify the nature of the limitation, the duration of the limitation, and the reason for the limitation." Rule 10.03, *West Virginia Trial Court Rules* [1999]. A broadly worded protective order, based merely upon an assertion of a blanket privilege against discovery, by a court constitutes abuse of discretion under Rule 26(c). Syllabus Point 7, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988).

Rule 26(c) mandates that litigants must make a showing of, and courts must find, "good cause" before a protective order can be entered.

This puts the burden on the party seeking relief to show some plainly adequate reason therefor. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.

*AT & T Communications of West Virginia, Inc. v. Public Service Com'n of West Virginia*, 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) (citations and emphasis omitted).

Courts have criticized the use of judicial secrecy orders under Rule 26(c) that are entered based upon a court's desire to quick-

ly settle a case, or a court's "potential abdication[ ] of judicial discretion" when litigants have stipulated to a secrecy order, without the court simultaneously giving any consideration of the public interests that are "sacrificed." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 785–86 (3d Cir.1994). So, in deciding whether "good cause" exists for a protective order concealing information under Rule 26(c), courts should balance the requesting party's need for the information against the possible injury accompanying the information's public dissemination. Factors which should be considered when determining whether "good cause" exists include: (1) whether disclosure would violate the privacy interests of the party seeking protection; (2) whether the information is being sought for a legitimate purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order is a public entity or official; and (7) whether the case involves issues important to the public. 23 F.3d at 787–91.[1]

Applying these concerns to the peer review materials at issue in this case, the circumstances clearly weigh in favor of allowing petitioner Brooks and the public access to the materials. To be clear, the peer review

materials at issue were placed into the public domain by the parties. The materials were introduced into evidence and examined by members of a jury in Grant County. Jury members were allowed to take notes, and the Grant County trial record indicates that jurors were told, as they were being excused from jury duty, that they could keep their trial notebooks. The parties therefore cannot claim to need a protective order to protect some privacy interest, because the materials are no longer "private" in any sense of the word.

Furthermore, an order concealing the materials will do nothing to encourage settlement between CAMC and Dr. Wahi. There is also nothing in the record to suggest that petitioner Brooks is seeking the materials for an improper purpose. The only legitimate purpose which CAMC and Dr. Wahi might be able to assert in support of a protective order limiting access to the peer review materials is to avoid serious embarrassment.

Counterbalancing CAMC's and Dr. Wahi's embarrassment are substantial public interests in health and safety. The petitioner needs the materials as a matter of encouraging the improvement of the public health system, an endeavor that the Legislature characterizes as "an important state interest." *W.Va.Code,* 55–7B–1 [2003] states in part:

> [I]n every human endeavor the possibility of injury or death from negligent conduct

---

**1.** Factors weighing in favor of the entry of an order include protecting privacy interests, encouraging settlement, avoiding production of information sought for improper purposes and preventing infliction of unnecessary or serious embarrassment, or, in the case of a corporation, monetary devastation. Circumstances weighing against protective orders exist where the information sought involves matters of public health and safety or other issues of significant and legitimate public concern. Similarly, where the party seeking the protective order is a public entity or official rather than a private individual, justification for a protective order is less compelling due to the public's countering interest.

A. Hotchkiss and D. Fleming, "Protecting and Enforcing Protective Orders: Easier Said Than Done," 71 Def.Couns.J. 161, 162 (April 2004).

When a party seeks a protective order to protect information that is "a trade secret or other confidential research, development or commercial information" under Rule 26(c)(7), this Court has set forth an additional test for "good cause."

In the Syllabus to *State ex rel. Johnson v. Tsapis,* 187 W.Va. 337, 419 S.E.2d 1 (1992):

> The following six-factor test should be applied in determining whether there is "good cause" pursuant to Rule 26(c)(7) of the West Virginia Rules of Civil Procedure to issue a protective order:
> 1. The extent to which the information is known outside of the defendant's business;
> 2. The extent to which it is known by employees and others involved in the defendant's business;
> 3. The extent of the measures taken by the defendant to guard the secrecy of the information;
> 4. The value of the information to the defendant and competitors;
> 5. The amount of effort or money expended by the defendant in developing the information; and
> 6. The ease or difficulty with which the information could be properly acquired or duplicated by others.

commands that protection of the public served by health care providers be recognized as an important state interest; ... [O]ur system of litigation is an essential component of this state's interest in providing adequate and reasonable compensation to persons who suffer from injury or death as a result of professional negligence[.]

Furthermore, access to these materials facilitates public monitoring of both the judicial system and the health care system. Public access to and participation in the civil justice system guards against judicial misconduct or incompetence; public access to the materials at issue—which have already been made public—also guards against misconduct or incompetence in the provision of medical care. And allowing the petitioner access to these materials results in efficiency: CAMC and Dr. Wahi have already battled over the competency issues contained in the materials in Grant County, and it is wholly inefficient to make the petitioner re-litigate that issue in Kanawha County. Litigants should not be made to repeatedly "re-invent the wheel."

When the public is able to see fair and open decision-making in the courts, the people are inspired to have respect and confidence in the administration of justice. When documents begin disappearing under the cloak of a protective order, the opposite result is often achieved. When the parties to a lawsuit select the public, civil justice system to resolve their disputes, it is generally im-

proper for those parties to demand that matters aired in the courtroom be concealed from the eyes of the public.[2]

I therefore respectfully concur.

---

2. This is not to say, of course, that everything that happens in a courtroom must be exposed to public scrutiny. For instance, matters introduced in the family courts in domestic relations or domestic violence cases, or records pertaining to juveniles, are most often exceptionally private matters that have no business being exposed to public scrutiny. The embarrassment and harm to the parties that results from the revelation of materials such as these is presumed to outweigh any public interest, and the Legislature has recognized this by enacting protective legislation. *See, e.g., W.Va.Code,* 48–1–303 [2001] (in a "domestic relations action, all pleadings, exhibits or other documents, other than orders, that are contained in the court file are confidential and not open for public inspection[.]"); *Rules of Practice and Procedure for Family Court,* Rule 6 [2002] ("[a]ll pleadings, recordings, exhibits, transcripts or other documents contained in a court file are confidential, and shall not be available for public inspection[.]"); *Rules of Practice*

and Procedure for Domestic Violence Civil Proceedings* Rule 6 (same); *W.Va.Code* 49–5–17 [2004] ("[r]ecords of a juvenile proceeding conducted under this chapter are not public records and shall not be disclosed to anyone[.]").

It is interesting to note, however, that the Legislature requires that orders in domestic relations and domestic violence civil actions *are* public records subject to public examination. *See, e.g., W.Va.Code,* 48–1–303(a) ("All orders in domestic relations actions entered in the civil order books by circuit clerks are public records."). Hence matters entered confidentially into the record—such as the parties' incomes, their allegations of misconduct, the value of their marital property, or the names and birthdates of their children—become matters exposed to public scrutiny when the family court judge enters an order making findings of fact upon the record. What the Legislature giveth with one hand, it takes away with the other.